[Cite as *State v. Beadle*, 2013-Ohio-5659.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                      CASE NO.  5-13-08

      v.

JOSEPH B. BEADLE,                          O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2012 CR 24

Judgment Affirmed

Date of Decision:  December 23, 2013

APPEARANCES:

    *Sarah M. Schregardus*  for Appellant

    *Mark C. Miller and Elizabeth H. Smith* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Joseph B. Beadle ("Beadle") appeals the February 11, 2013 judgment of the Hancock County Court of Common Pleas journalizing his conviction by a jury for one count of possession of cocaine, in violation of R.C. 2925.11(A), and sentencing him to serve five years of community control.

{¶2} On the night of January 22, 2012, Trooper Justin Craig of the Ohio State Highway Patrol was on stationary patrol on I-75 in Hancock County when he noticed a 1998 Honda Accord travelling with one headlight not illuminated. Trooper Craig followed the vehicle and observed it drift over the center line by half a car length. Trooper Craig activated his overhead lights and sirens to initiate a traffic stop and the vehicle pulled over to the berm.

{¶3} Trooper Craig approached the vehicle and the driver gave Trooper Craig a Tennessee I.D. Card identifying himself as the defendant, Beadle. Trooper Craig also observed a female seated in the front passenger seat. Trooper Craig advised Beadle that the reason for the stop was the unilluminated headlight and asked Beadle if the vehicle belonged to him. Beadle stated that the vehicle was his cousin's.

{¶4} Trooper Craig returned to his patrol cruiser and ran a search of Beadle's name through a Tennessee database which revealed that Beadle's

driver's license was suspended. Trooper Craig approached the vehicle for a second time to inquire about Beadle's license suspension. When he arrived at the vehicle, the female passenger, identified as Martina Davis, informed him that she had the vehicle's owner on the phone and could prove that they had permission to use the vehicle. Trooper Craig believed this to be an odd statement given the fact that he never questioned Beadle's response regarding the ownership of the vehicle. Trooper Craig testified that this statement coupled with Beadle's license suspension caused him to be suspicious. As a result, he asked Beadle to exit the vehicle and placed him in the cruiser so that he could investigate further.

{¶5} Trooper Craig then observed Beadle begin to cry as he brought Beadle back to his cruiser. Trooper Craig conducted a consensual pat-down frisk for weapons of Beadle's outer garments and then placed Beadle in the right front passenger seat of the cruiser. Once seated, Trooper Craig asked Beadle about his travel plans. Beadle responded that they were coming from Columbus and were just driving around. When asked about the passenger, Beadle explained that he did not know her name and only knew her as "Big Red."

{¶6} Trooper Craig left Beadle in his cruiser and approached the passenger, Martina, who was still seated in the vehicle. Trooper Craig recalled that Martina did not appear to be nervous and informed him that they were driving to Toledo to visit family.

{¶7} Trooper Craig returned to his cruiser to further question Beadle. Upon his return, he noticed Beadle had his arms and hands down by his feet. Beadle also had papers in his hand and looked as if he had just been emptying his pockets. Beadle then showed Trooper Craig a plane ticket to prove that he had flown into Columbus from Tennessee a couple days ago. Suspicious about the differing stories he heard from Beadle and Martina regarding their travel plans, Trooper Craig asked Beadle if he had family in Toledo and why he claimed to not know Martina well when they both claimed to know the cousin who owned the vehicle. Beadle responded that he did not have any family in Toledo and that he was "just trying to get a piece of Martina." (Doc. No. 104 at 186). During this conversation, Trooper Craig observed Beadle's chest rising and falling extremely rapidly and that he was very nervous. Based on Beadle's suspended driver's license, the story about the owner of the car, the conflicting stories regarding their travels, and the degree of Beadle's nervousness, Trooper Craig radioed dispatch for a canine unit to come to the scene.

{¶8} Shortly thereafter, Deputy Miller of the Hancock County Sheriff's Office arrived on the scene with his canine, Kevin. Sergeant Walter of the Ohio State Highway Patrol also arrived as backup. Martina was removed from the vehicle, patted down, and her purse was searched prior to being placed directly behind Beadle in Trooper Craig's cruiser.

{¶9} Deputy Miller performed a canine search on the vehicle. Canine Kevin positively alerted to the presence of narcotics on the driver's side door. Trooper Craig then advised Beadle of his rights and asked him if there was anything illegal in the vehicle, to which Beadle responded no. Trooper Craig then performed a search of the vehicle, however, no drugs were found.

{¶10} Trooper Craig returned Martina, who had a valid driver's license, to the vehicle. He then asked Beadle if he could perform a search of his person. Beadle consented. Trooper Craig searched Beadle outside his cruiser and found a wadded up napkin in one of the coat pockets. As Trooper Craig unfolded it, the wind blew away white power that was contained inside. Trooper Craig also found $2,708.00 in cash in another one of Beadle's pockets. Beadle told Trooper Craig that his mother died in September and the money was part of his inheritance. Having no reason to further detain them, Trooper Craig told Beadle and Martina that they were free to leave.

{¶11} When Trooper Craig returned to his cruiser, he looked under the front passenger seat as it was customary for him to do when a person had been alone in the cruiser. There, he located a cigarette pack underneath the seat an inch and a half to two inches from where Beadle's heels had just been. Inside the cigarette pack, Trooper Craig found two cigarettes and a white rock which he

suspected to be crack cocaine. Upon finding the items, Trooper Craig quickly returned to the vehicle, which was still parked on the berm, and arrested Beadle.

{¶12} On January 24, 2012, Beadle was indicted on one count of possession of cocaine, in violation of R.C. 2925.11(A), a felony of the fifth degree. Beadle was represented by the Hancock County Public Defender. On March 2, 2012, Beadle filed a motion complaining that his counsel did not communicate with him enough and requested the court to appoint him a specific attorney of his choosing. Beadle's counsel at the time also filed a motion to withdraw from his representation citing a breakdown in communication and irreconcilable differences. The trial court subsequently allowed Beadle's counsel to withdraw and honored Beadle's request by appointing the attorney requested by Beadle in his motion.

{¶13} On January 28 and 29, 2013, the trial court conducted a jury trial in the case. On the morning of the trial before the jury was empaneled, Beadle orally made a request for new counsel. After further inquiry on the record, the trial court denied Beadle's request finding that Beadle failed to raise sufficient grounds to allow him to obtain new counsel. The case then proceeded to trial. The prosecution presented the testimony of four witnesses, who included: Trooper Craig, Sergeant Walter, Deputy Miller, and Jacqueline Smith, a criminalist with

the Ohio State Highway Patrol crime lab who tested the white substance found in the cigarette pack. Beadle did not present any evidence in his defense.

{¶14} After hearing the evidence, the jury found Beadle guilty of possession of cocaine. The trial court sentenced Beadle to serve five years of community control.

{¶15} Beadle now appeals and presents the following assignments of error for our review.

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED WHEN IT REFUSED TO ALLOW JOSEPH BEADLE TO HIRE COUNSEL IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT VIOLATED JOSEPH BEADLE'S RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN, IN THE ABSENCE OF SUFFICIENT EVIDENCE, THE TRIAL COURT CONVICTED BEADLE OF POSSESSION OF DRUGS. FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.**

## ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT VIOLATED JOSEPH BEADLE'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR POSSESSION OF COCAINE, WHEN THAT JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FIFTH AND FOURTEENTH AMENDMENTS**

**TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.**

*First Assignment of Error*

{¶16} In his first assignment of error, Beadle claims that the trial court erred when it denied his second request for new counsel. In support of his claim, Beadle argues that his Sixth Amendment right to counsel was violated and that granting his request would not have further delayed the proceedings or prejudiced the prosecution's case. However, Beadle fails to mention on appeal that his request to substitute counsel was not made *until the morning of his trial*. The following conversation transpired on the record regarding Beadle's request for new counsel.

> **Trial Court: Okay. Jury has been summoned. They have been checked in in the reception area in the basement. They have viewed the jury instructional video, and it's my understanding they are ready to proceed**.
>
> **[Defense Counsel], you brought a matter to the Court's attention in Chambers that I think we need to put on the record about the Defendant's desires concerning your continued representation, is that correct?**
>
> **Defense Counsel: That is correct, Your Honor. When I arrived at the courthouse I was talking to my client about some preliminary matters involving the trial. At that time he indicated to me that he wished to relieve me of my representation of him and he was going to seek to retain his own counsel. I indicated to him that I would bring that to the Prosecutor's attention and to the Court's attention, which I did in Chambers. And then indicated again that he might have to make that request to you in court as well.**

**Trial Court:** Okay. Mr. Beadle, what's the story here?

**Beadle:** Your Honor, I feel like my lawyer doesn't feel confidence in fighting this case for me. And I feel like I'm being coerced into a plea of guilty. So I would rather try to get my own attorney so I can get some more legal advise [*sic*] on the situation.

**Trial Court:** Well, Mr. Beadle, my file notes reflect that the case started with the Public Defender's Office representing you[.]

**Beadle:** Yes, sir.

**Trial Court:** And you and [Public Defender] parted way [*sic*]. In other words, you didn't like his representation so the court appointed [Defense Counsel] to you. During the course of representation here [Defense Counsel] filed something called a motion for intervention in lieu of conviction, which if granted and you had completed that intervention program the case would have been dismissed. We had another hearing then and you told him to withdraw the motion, which he did. We've had it set for trial two or three times, and I don't understand how you're being coerced into entering a plea when we've got a jury out in the hallway ready to get started if you want to have a jury trial.

* * *

**Trial Court:** * * * Public Defender has time in this case. [Defense Counsel] has time in this case. I am not finding that you're giving me a reason to give you a new lawyer. You're saying you don't want to be coerced into entering a plea. You're not. We have a jury here. [Defense Counsel], you prepared to go forward today?

**Defense Counsel:** Yes, Your Honor.

> **Trial Court: So, I guess I'm not following the logic and reasoning, Mr. Beadle. If there's anything else, now is the time put it on the record and we'll try to figure this thing out.**

(Doc. No. 104 at 6-8). The trial court then engaged in a lengthy discussion with Beadle and thoroughly addressed all of Beadle's concerns. Notably, none of Beadle's complaints indicated that his trial counsel was not competent to represent him in his defense nor did he provide any valid reason for why the trial should not proceed forward. Accordingly, the trial court found Beadle failed to raise sufficient grounds to allow him to terminate his trial counsel's representation and denied Beadle's request for new counsel.

{¶17} "The trial court may deny the request to substitute counsel if the complaint is unreasonable." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶ 148. "Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *State v. Jones*, 91 Ohio St.3d 335, 342, 2001-Ohio-57. The trial court's decision is reviewed under an abuse of discretion standard. *State v. Cowans*, 87 Ohio St.3d 68, 73, 1999-Ohio-250.

{¶18} Here, there is nothing in the record to substantiate Beadle's claim that the trial court erred in denying his request for new counsel. To the contrary, granting Beadle's last minute request may have been prejudicial to the prosecution's case and would have only served to further delay the trial court proceedings. Therefore, we do not find the trial court's decision to deny Beadle's request to be an abuse of discretion and overrule the first assignment of error.

*Second and Third Assignments of Error*

{¶19} In his second and third assignments of error, Beadle argues that his conviction for possession of cocaine was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶20} When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus.

{¶21} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, " '[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered .' " *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶22} Beadle was convicted of possession of cocaine, in violation of R.C. 2925.11(A), which states in relevant part.

> **(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.**

Subsection (C) of R.C. 2925.11 further provides, in pertinent part:

> **(C) Whoever violates division (A) of this section is guilty of one of the following:**
>
> **(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:**
>
> **(a) Except as otherwise provided in division (C)(4)(b), (c), (d), (e), or (f) of this section, possession of cocaine is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.**

{¶23} At trial, Jacqueline Smith, the criminalist for the Ohio State Highway Patrol, testified that she analyzed the white powder located in the cigarette pack found underneath the front passenger seat of Trooper Craig's cruiser. She

identified the powder as cocaine hydrochloride, a Schedule II Controlled Substance derived from coca leaves. Ms. Smith further testified that the substance found in the cigarette pack weighed 0.17 grams.

{¶24} On appeal, Beadle contends the prosecution failed to prove beyond a reasonable doubt that he knowingly possessed the cocaine found in Trooper Craig's cruiser. Specifically, Beadle argues that the passenger, who was also placed in the cruiser, could have put the cigarette pack containing the cocaine under the cruiser's front passenger seat.

{¶25} The trial court advised the jury on the legal definition of "knowingly" and "possession" according to the law as set forth in R.C. 2901.22(B), R.C. 2925.01(K), the Ohio Jury Instructions, and relevant case law.

> **Knowingly. A person acts knowingly regardless of his purpose when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exists.**
>
> **Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You will determine from these facts and circumstances whether there existed at the time in the mind of the Defendant an awareness of the probability that he possessed cocaine.**
>
> **\* \* \***
>
> **Possess. Possess means having control over a thing or substance, but not inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.**

> **Drug possession may be shown by either actual or constructive possession. An individual is in constructive possession when he is able to exercise dominion and control over an item even though it is not in his physical possession. Dominion and control may be proven by circumstantial evidence alone. Ownership of the drugs need not be established for constructive possession.**
>
> **The issue of whether a person charged with drug possession knowingly possessed a controlled substance is to be determined from all the attendant facts and circumstances available.**

(Doc. Nos. 58 at 7-8, 105 at 329-30).

{¶26} Trooper Craig testified at trial that Beadle began crying as he was taken to Trooper Craig's cruiser for further questioning. Prior to placing Beadle in the cruiser, Trooper Craig conducted a pat-down frisk for weapons of Beadle's outer garments. Trooper Craig explained that Beadle was wearing multiple layers of clothing including more than one pair of pants and more than one jacket. Trooper Craig observed Beadle to be extremely nervous—specifically stating that he witnessed Beadle's chest rapidly rising and falling. Upon his return to the cruiser and after speaking to the passenger, Martina, Trooper Craig noticed Beadle's hands and arms positioned down by his feet, where the cigarette pack containing the cocaine was later found, and it also looked as if Beadle had just been emptying his pockets.

{¶27} Trooper Craig also grew suspicious that Beadle was engaged in criminal activity when he and Martina told different stories about their travel plans

and about their familiarity with each other. Trooper Craig also found the volunteering of information regarding the ownership of the vehicle and Beadle's plane ticket to be further suspect.

{¶28} Canine Kevin alerted to the presence of narcotics on the driver's side door, where Beadle had previously been sitting. After the search of the vehicle revealed no drugs, Trooper Craig conducted a consensual search of Beadle's person and found a napkin containing white powder and $2,708.00 in Beadle's pockets. Trooper Craig testified that it was unusual for a person to be carrying such a substantial amount of currency. Trooper Craig stated that he did not search Martina for a second time because a pat-down search for weapons was conducted on her and that her purse was also searched prior to being placed in the cruiser. Trooper Craig stated that no cigarette packs were found on Martina during this search. He further explained that Martina was a large woman who was wearing extremely tight clothing and, unlike Beadle's apparel at the time, it was readily apparent that there was no contraband or weapons concealed under her clothing.[1] He further recalled that, also unlike Beadle, Martina showed no signs of nervousness during his interactions with her.

{¶29} Trooper Craig testified that he is in possession of his cruiser at all times and does not share it with anyone. Although Trooper Craig testified that he

---

[1] Trooper Craig testified that Martina's driver's license listed her as weighing 300 pounds.

did not search his cruiser prior to starting his shift on the date of Beadle's arrest, he also testified that he always performs a search after having someone in the vehicle and that he searched his cruiser after the last person had been in it. Trooper Craig described the backseat of his cruiser as "very tight" quarters. (Doc. No. 104 at 194). He explained that, depending on their size, a person may have difficulty sitting straight in the seat and would likely have to place his or her feet sideways. He also recalled that his reconstruction gear was in the backseat at the time of the stop further limiting the space. Trooper Craig testified that he found the cigarette pack containing the cocaine underneath the front passenger seat inches away from where Beadle's heels had just been. He further stated that it would have been extremely difficult for Martina to have placed the cigarette pack under the front seat given her size and the fact that she was sitting sideways in the backseat and had limited space to move.

{¶30} Notably, Sergeant Walter's testimony corroborated Trooper Craig's description of Martina as a large woman and Trooper Craig's testimony that Martina would have been limited in her movement while seated in the cruiser's backseat.

{¶31} After viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime of possession of cocaine proven beyond a reasonable doubt.

-16-

Specifically, the evidence demonstrated that Beadle's behavior and conduct during the stop was consistent with someone who was aware he was in possession of cocaine. The evidence also established that Beadle was able to exercise dominion and control over the cigarette pack containing the cocaine while he was seated in Trooper Craig's cruiser. With regard to the manifest weight of the evidence, we note that at trial Beadle was able to advance his defense that Martina was the one who placed the cigarette pack under the front seat of the cruiser through the cross-examination of the prosecution's witnesses. However, the jury as the trier of fact chose not to believe the theory advocated for by the defense. Accordingly, we cannot say that the trier of fact clearly lost its way in finding Beadle guilty of possession of cocaine. Beadle's second and third assignments of error are overruled.

{¶32} Based on the foregoing, the conviction and sentence of the Hancock County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and ROGERS, J., concur.**

**/jlr**