[Cite as *State v. Featherston*, 2017-Ohio-5487.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                    CASE NO. 6-16-10

      v.

CHARLES REY FEATHERSTON,           O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Hardin County Common Pleas Court
Trial Court No. 2016 2094 CRI

Judgment Affirmed

Date of Decision:    June 26, 2017

APPEARANCES:

    *Michael B. Kelley* for Appellant

    *Jason M. Miller* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-Appellant, Charles R. Featherston ("Featherston"), appeals the October 6, 2016 judgment of the Hardin County Court of Common Pleas journalizing his conviction by a jury for three (3) counts of Receiving Stolen Property, one (1) count of Identity Fraud Against a Person in a Protected Class, and one (1) count of Forgery, and sentencing him to serve fifty-seven (57) months in prison. Featherston presents four assignments of error, alleging that: (1) the trial court erred by failing to merge his three receiving stolen property convictions; (2) the trial court erred by failing to appoint alternate counsel, which deprived Featherston of effective representation; (3) the trial court erred by failing to exclude hearsay testimony; and (4) the trial court erred in accepting the jury's guilty verdict, which was against the manifest weight of the evidence. For that reasons that follow, we affirm the convictions of the Appellant.

*Facts*

{¶2} On June 11, 2016, seventy-year-old Donald Payne ("Payne") was running errands when he stopped briefly at his home in Lubbock, Texas. Payne decided to leave his 2007 Honda Ridgeline pick-up truck running in his driveway when he went into his home. However, when Payne returned to his truck approximately three minutes later, he found his pick-up truck had been stolen.

{¶3} Inside his pick-up truck at the time it was stolen was Payne's wallet, tools, golf clubs, bible, cash, air tank, and his Kahr nine millimeter handgun and ammunition. In addition to his personal belongings, Payne's wife's wallet and cell phone were also inside his truck when it was stolen. Payne reported the theft to the authorities, and called his bank and credit card companies to report the theft of his bank/credit cards. However, Payne failed to cancel one of his credit cards, which resulted in approximately $3,000 in fraudulent charges.

{¶4} On June 15, 2016 in Kenton, Ohio, local law enforcement received information of a possible stolen truck with Texas license plates. Law enforcement located a pick-up truck matching the description of Payne's truck at a local gas station. However, the detective who ran the plate number of the truck had incomplete license information, which resulted in the truck coming back as not stolen.

{¶5} Around 11 a.m. on the following day, the same truck was located at 527 S. Detroit St. in Kenton, Ohio. When law enforcement gave the complete license plate information to police dispatch, the truck came back as the reported stolen 2007 Honda Ridgeline truck owned by Payne. With this information, officers conducted a stop of the vehicle. Featherston, who was the same individual observed by police in the truck the day prior, was the driver of the pick-up at the time the stop was conducted. Police officers ordered Featherston to exit the vehicle at gunpoint and

during his pat down, officers located a pack of cigarettes on Featherston that contained Payne's stolen credit card.

{¶6} Officers' subsequent search of the truck revealed that some of Payne's personal items were inside the pick-up truck. However, Payne's wallet and his handgun were not located in the truck.

{¶7} In addition to Payne's belongings, Featherston's hat and a bag with his mail were found in the vehicle. The mail contained Featherston's name and Texas address. With this information, authorities determined that Payne's Texas residence was approximately four (4) or seven (7) miles from Featherston's residence in Lubbock, Texas.

{¶8} Later, officers searched the 527 South Detroit St. home and found a Kahr nine millimeter handgun under clothes in a bedroom closet. The bedroom was the room used by Featherston while staying in Kenton. A cell phone window mount that Featherston purchased at Walmart in Kenton was also located in the bedroom closet near the handgun.

{¶9} Investigation of Featherston's activities while in Kenton revealed that Featherston used Payne's credit card to purchase fuel at the gas station where authorities first saw him. Payne's credit card was also used to purchase, among other things, a cell phone, a cell phone window mount, and motor oil at Walmart.

Video and camera footage, as well as Walmart's data records, revealed that Featherston use of Payne's credit card took place at the Kenton Walmart store.

{¶10} As a result of the theft, Payne was only able to recover his driver's license and his golf clubs. Additionally, Payne's insurance company totaled Payne's truck due to the expense of transporting the truck from Kenton back to Payne's residence in Texas.

*Procedural History*

{¶11} On July 26, 2016, the Hardin County Grand Jury indicted Featherston on the following: two (2) counts of Receiving Stolen Property, in violation of Ohio Revised Code 2913.51(A),(C), felonies of the fourth degree (with the second count containing a firearm specification pursuant to Ohio Revised Code 2941.141(A)) (Counts 1 and 2); one (1) count of Receiving Stolen Property, in violation of Ohio Revised Code 2913.51(A),(C), a felony of the fifth degree (Count 3); one (1) count of Identify Fraud of an Elderly Person, in violation of Ohio Revised Code Section 2913.49(B)(2), (I)(3), a felony of the third degree (Count 4); one (1) count of Forgery, in violation of Ohio Revised Code 2913.31(A)(1), (C)(1)(c)(i), a felony of the fourth degree (Count 5); and one (1) count of Having Weapons While Under Disability, in violation of Ohio Revised Code 2923.13(A)(2), a felony of the third degree (Count 6).

{¶12} On September 14, 2016, Featherston appeared in the trial court for a change of plea hearing, however, the negotiations between Featherston and the State fell through and Featherston did not change his plea. However, at the hearing the State requested that the trial court dismiss count six, Having Weapons While Under Disability, which the court granted. On September 27, 2016, the day before Featherston's scheduled jury trial, a second change of plea hearing was held in the trial court. Once again, the plea deal fell through.

{¶13} Featherston's remaining charges proceeded to a jury trial on September 28, 2016. The State presented eleven (11) witnesses in its case in chief, and rested. The defense then requested dismissal of the charges under Crim.R. 29, which was granted in part by the trial court. The trial court determined that the State did not prove the $1,000 statutory enhancement for Identify Fraud of an Elderly person in Count 4, which resulted in the charge being reduced from a felony of the third degree to a felony of fourth degree. However, the trial court overruled Featherston's motion on the other charges.

{¶14} Featherston presented no defense, and defense counsel renewed Featherston's Rule 29 motion, which was overruled, and the matter proceeded to the jury for deliberations. On September 28, 2016, the jury found Featherston guilty on all counts, including the firearm specification contained in count two.

{¶15} Featherston was sentenced on October 6, 2016 in the trial court. The State presented one (1) witness at the sentencing hearing, and Featherston spoke on his own behalf. The trial court found that the convictions under count four, Identity Fraud of an Elderly Person, and count five, Forgery, were allied offenses of similar import and therefore merged. The State elected to proceed to sentencing on count four, Identity Fraud of an Elderly Person. After reviewing the statutory requirements as provided in R.C. 2929.11 and R.C. 2929.12, the trial court sentenced Featherston to consecutive sentences on Counts 1, 2, 3, and 4 and the specification, resulting in a total of fifty-seven (57) months of imprisonment, with twelve months being mandatory. Featherston was also assessed a $2,000 fine, $650 in restitution, and court costs. Featherston now appeals, and presents the four following assignments of error for our review:

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE COUNTS ONE, TWO, AND THREE FOR SENTENCING AS THE THREE COUNTS ARE ALLIED OFFENSES WITH THE SAME ANIMUS.**

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT ERRED WHEN IT FAILED TO APPOINT ALTERNATE COUNSEL FOR APPELLANT AS APPELLANT COULD NOT EFFECTIVELY COMMUNICATE WITH HIS APPOINTED ATTORNEY THEREFORE WAS DEPRIVED OF EFFECTIVE REPRESENTATION.**

## ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED WHEN IT FAILED TO EXCLUDE HEARSAY OVER APPELLANT'S OBJECTION, THE HEARSAY WAS NOT HARMLESS ERROR, AND THE COURT'S ERROR EFFECTED APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL.**

## ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT ERRED WHEN IT ACCEPTED THE JURY'S GUILTY VERDICT WHICH WAS CLEARLY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND WAS BASED UPON INSUFFICIENT EVIDENCE.**

We will discuss each assignment of error in turn.

### *First Assignment of Error*

{¶16} In his first assignment of error, Featherston contends that the trial court erred when it failed to merge the three counts of receiving stolen property (Counts 1-3) because the three counts are allied offenses containing the same animus. For the following reasons, we disagree.

### *Standard of Review*

{¶17} "'A defendant bears the burden of proving that the offenses for which he has been convicted and sentenced constitute allied offenses of similar import.'" *State v. Vanausdal,* 3rd Dist. Shelby No. 17-16-06, 2016-Ohio-7735, ¶ 7, quoting *State v. Campbell,* 12th Dist. Butler No. CA2014-06-137, 2015-Ohio-1409, ¶ 18, citing *State v. Luong,* 12th Dist. Butler No. CA2011-06-110, 2012-Ohio-4520, ¶ 46. Additionally, a reviewing court may look to the information contained in the record

to make its allied offense determination. *Id.* An appellate court then reviews *de novo* the question of whether offenses are allied offenses of similar import. *State v. Potts,* 2016-Ohio-5555, 69 N.E.3d 1227, ¶ 93 (3rd Dist.), citing *State v. Stall,* 3rd Dist. Crawford No. 3-10-12, 2011-Ohio-5733, ¶ 15, citing *State v. Brown,* 3rd Dist. Allen No. 1-10-31, 2011-Ohio-1461, ¶ 36.

*R.C. 2941.25, Allied Offenses of Similar Import*

Ohio's multiple-count statute, codified in R.C. 2941.25, states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶18} In *State v. Ruff,* the Supreme Court promulgated the following three-part test for determining whether offenses merged: "[u]nder R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892 (2015),

paragraph three of the syllabus. An affirmative answer to any of the preceding questions will permit separate convictions. *Id.* at ¶ 31.

*Analysis*

**{¶19}** Featherston was indicted on three separate counts of Receiving Stolen Property, in violation of R.C. 2913.51(A),(C).[1] R.C. 2913.51 states, in its pertinent part: "[n]o person shall *receive*, *retain*, or *dispose* of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense. * * * Whoever violates this section is guilty of receiving stolen property." (Emphasis added.) R.C. 2913.51(A),(C).

**{¶20}** Featherston argues that each of his Receiving Stolen Property convictions should merge, because the items set forth in each count were stolen at the same time from the same victim.[2] Furthermore, Featherston directs us to *State v. Skapik,* a post-*Ruff* case with a similar fact pattern, asserting that the *Skapik* court made it clear that when multiple items are stolen at the same time the counts for each item merge. *State v. Skapik,* 2015-Ohio-4404, 42 N.E.3d 790, ¶¶ 13, 15 (2nd Dist.).

---

[1] Specifically, Featherston was charged with Receiving Stolen Property, with said property being a motor vehicle, in Count 1; Featherston was charged with Receiving Stolen Property, with said property being a firearm in Count 2; and Featherston was charged with Receiving Stolen Property, with said property being a credit card, in Count 3.

[2] It is not disputed that the Payne's pick-up truck contained Payne's credit cards and gun.

{¶21} In *Skapik,* the defendant stole two firearms, a bulletproof vest, and other items from an off duty deputy sheriff's vehicle. *Id.* at ¶ 12. Skapik was subsequently convicted on three separate counts related to the stolen items from the deputy sheriff's vehicle. *Id.* Skapik contended that the three counts for stolen items out of the deputy sheriff's vehicle should merge, because "he stole everything at one time from one location in a single act committed against a single victim." *Id.* The *Skapik* court agreed with Skapik, holding that "[i]n our view, this conduct constituted a single offense committed with a single animus resulting in a single harm against a single victim." *Id.* at ¶ 13. Asserting that their decision was consistent with *Ruff,* the Second District Court of Appeals concluded that Skapik could "be convicted and sentenced for only one theft offense in connection with the items he stole from the deputy sheriff's vehicle."

{¶22} However, we find Featherston's reliance on *Skapik* to be misplaced and distinguishable from the facts of this case. Instead, we choose to conduct our analysis consistent with the factors outlined by the Ohio Supreme Court in *State v. Ruff.*

{¶23} As we noted previously, in *State v. Ruff,* "[u]nder R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed

separately, or (3) the conduct shows that the offenses were committed with separate animus." *Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892 (2015), paragraph three of the syllabus.

{¶24} The first *Ruff* factor, "were the offenses dissimilar in importance or significance," questions whether each offense caused a separate, identifiable harm to the victim. *Ruff, supra.* In our review we find that each of the Receiving Stolen Property convictions did, in fact, create separate and identifiable harm to Payne. In Count 1, we find that Payne's 2007 Honda Ridgeline Truck was the subject of the charge. We further find that Payne's truck was "totaled" by his insurance company. Therefore, Payne's truck loss is separate from his property losses in Counts 2 and 3. In Count 2, Payne's loss of use of his handgun deprived him of its use (since it was held as evidence) to defend himself, which is separate from his loss in Counts 1 and 3. And as to Count 3, Payne's stolen credit card resulted in him having to pay $550 of the fraudulent charges, a loss separate and distinguishable from Counts 1 and 2. Thus, the State proved three separate and identifiable harms suffered by Payne in each of Featherston's Receiving Stolen Property convictions. Even though Payne was the only victim of the Receiving Stolen Property charges of which Featherston was convicted, we find that the harm caused him was separate and identifiable. Moreover, Featherston chose to receive Payne's truck, knowing that he lacked permission to do so; Featherston chose to receive and retain Payne's credit

card and used it for his own personal gain; and Featherston chose to receive and retain Payne's handgun by removing it from Payne's truck to the bedroom where he was staying, perceivably for some nefarious purpose.

{¶25} Because we have answered the first *Ruff* factor affirmatively, finding that separate convictions for each of the three (3) Receiving Stolen Property counts are permissible, no further factors need to be addressed. Accordingly, Featherston's first assignment of error is overruled.

*Second Assignment of Error*

{¶26} In his second assignment of error, Featherston contends that the trial court erred when it failed to appoint him alternate counsel, because he could not communicate with his appointed attorney. Featherston also asserts that this lack of communication resulted in him being deprived of effective representation. For the following reasons, we disagree.

*Standard of Review*

{¶27} While both sides have directed this court to analyze this assignment of error as an ineffective assistance of counsel claim, a review of the record reveals that Featherston made his motion for new counsel at his September 14, 2016 change of plea hearing, which the trial court ultimately denied. Thus, we determine the correct standard of review is the abuse-of-discretion standard, pursuant to *State v. Cowans*, 87 Ohio St. 68, 72-73, 1999-Ohio-250, 717 N.E.2d 298.

**{¶28}** "'An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel.'" *Id.*, quoting *United States v. Iles,* 906 F.2d 1122, 1130 (6th Cir.1990). "'[T]he trial judge may * * * [deny the requested substitution and] require the trial to proceed with assigned counsel participating if the complaint * * * is unreasonable.'" *Id.* at 72-73, quoting *State v. Deal,* 17 Ohio St.2d 17, 244 N.E.2d 742 (1969), syllabus. "The trial court's decision is reviewed under an abuse of discretion standard." *Id.*

**{¶29}** "Under an abuse of discretion standard, a lower court's decision will not be reversed for mere error, but only when the court's decision is unreasonable, arbitrary, or unconscionable." *Morrow v. Becker,* 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 9. Given that the abuse of discretion standard is a deferential review, "[i]t is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by countervailing arguments." *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14. "If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion." *Middendorf v. Middendorf,* 82 Ohio St.3d 397, 401, 1998-Ohio-403, 696 N.E.2d 575.

**{¶30}** "'Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.'" *State v. Beadle,* 3rd Dist. Hancock No. 5-13-08, 2013-Ohio-5659, ¶ 17, quoting *State v. Jones,* 91 Ohio St.3d 335, 342, 2001-Ohio-57, 744 N.E.2d 1163.

*Analysis*

**{¶31}** Featherston was determined to be indigent and was appointed an attorney by the trial court. Two weeks prior to trial, Featherston told the trial court that he wanted to be appointed a different attorney, as evidenced by the following conversation that took place on the record during the failed change of plea hearing on September 14, 2016:

> **Trial Court:  Alright.  Have you had plenty of time to talk with [defense counsel] about that proposal?**
>
> **Featherston: Somewhat.**
>
> **Trial Court:  Alright.  Do you have any questions about how that proposal works? I mean are you clear as to what the proposal is?**
>
> **Featherston:  If I might add Your Honor, me and my attorney have a conflict of communication.**
>
> * * *

> **Trial Court: Alright. Now you started to say something else. What else is it that you wish to say?**
>
> **Featherston: Due to the fact of the conflict of communication between me and my attorney, the appointed counsel, there is no way of me understanding a lot of things what he was telling me, and you know, I don't feel confident in him running my, [*sic*] in the trial and dealing with my case due to the fact that I don't understand where he's coming from. He's too highly educated with his words on me. You know, he discombobulates my thinking. So I would like to ask the Court to dismiss him and reassign me to a different counsel, but that's just my move towards the Court.**

(09/14/2016 Tr. at 6-7).

{¶32} Thereafter, the trial court discussed with Featherston, and his defense attorney, Featherston's reasons for the request. Notably, Featherston's complaints did not involve issues of whether his attorney was competent to represent him in his defense. To the contrary, Featherston's appointed counsel had nearly thirty years of experience at the time of the hearing. Featherston complained that his attorney was "too highly educated" for him to understand.[3] Ultimately the trial court determined that Featherston failed to present sufficient grounds for his request for a new attorney and denied Featherston's motion.

---

[3] We note, however, that the record also reveals that Featherston was able to use "discombobulates" appropriately in a sentence, even though he claimed that he could not understand trial counsel's "highly educated" words.

{¶33} Our review of the record supports that the relationship between Featherston and his counsel was not perfect.[4] However, in overruling Featherston's request the trial court conducted an adequate inquiry of Featherston's concerns on the record, and determined that no legal basis existed to grant Featherston's request for new counsel. (*Id.* at 18). Additionally, the court found that the conflict in communication between Featherston and his attorney was not so great as to prevent an adequate defense, and that trial counsel "[could] be ready for the trial." (*Id.*).

{¶34} The record also demonstrates that Featherston's breakdown of communication with his attorney was short lived as Featherston's counsel advised the court that he was able to discuss another plea offer with Featherston at a subsequent hearing. (09/27/2016 Tr. at 4-5). Moreover, consistent with the Ohio Supreme Court's reasoning in *State v. Cowans,* the evidence in the record supports that the breakdown in communication was temporary, and as such, Featherston and his attorney's communication concerns did not rise to the level of a "complete breakdown" or "total lack of communication" warranting the appointment of substitute counsel. *See, Cowans,* 87 Ohio St.3d 68, 73-74, 1999-Ohio-250, 717 N.E.2d 298.

---

[4] Featherston directs us to the portion of the record where defense counsel asserted that "communication * * * is tenuous, at best, and so there has been a breakdown in communication," and trial counsel's assertion that the difficulty in the "communication is so poor between us that I think [it] inhibits" trial preparation. (*Id.* at 13, 15).

**{¶35}** Thus, under the facts of this case, the trial court did not abuse its discretion by overruling Featherston's motion for a new attorney. Appellant's second assignment of error is therefore overruled.

### Third Assignment of Error

**{¶36}** In his third assignment of error, Featherston asserts that the trial court erred when it failed to exclude hearsay testimony; that the hearsay admitted was not harmless error; and that the trial court's error violated his right to due process and a fair trial. For the following reasons, we find no merit to appellant's argument.

### Standard of Review

**{¶37}** "'[T]he trial court's decision to admit hearsay is not governed by the test of abuse of discretion. * * *. Instead, errors relating to the trial court's admission of hearsay must be reviewed in light of Evid.R. 103(A) and the standard established in Crim.R. 52(A), providing that such errors are harmless unless the record demonstrates that the errors affected a party's substantial right." *State v. Richcreek,* 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442, ¶ 31 (6th Dist.). On appeal, challenged hearsay is subject to *de novo* review under the applicable hearsay rule * * *." *Id.* at ¶ 32.

### Analysis

**{¶38}** Featherston asserts that there were a number of hearsay objections that were overruled by the trial court in error. Specifically, Featherston identifies five

examples of objected to hearsay, which he asserts shouldn't have been permitted, and resulted in his failure to receive a fair trial. For ease of analysis, we chose to discuss the hearsay issues separately and by deponent.

*Payne's Testimony*

**{¶39}** The first error presented by Featherston involves Payne's alleged hearsay testimony. During his direct examination Payne testified as follows: "I think it was Detective Seely [*sic*] had called me and said that they had found the vehicle," which defense counsel objected to on the basis of hearsay. (09/28/2016 Tr. at 14). After a brief discussion, the trial court permitted Payne to testify that his truck was found in Ohio. (*Id.*) Later in the trial Detective Seely testified that he told Payne that his (Payne's) vehicle was located in Ohio. (*Id.* at 44-45). Assuming, *arguendo*, that Payne's testimony was hearsay, any error in its admission was harmless because Detective Seely (the declarant) testified as to locating Payne's vehicle in Ohio. Accordingly, Featherston's due process and hearsay concerns regarding Payne's testimony are without merit as the declarant of the statement was available to testify to the truth of the statement. Thus, any error in the admission of Payne's statement was harmless beyond a reasonable doubt.

*Detective Seely's Testimony*

**{¶40}** Featherston presents several hearsay examples in regards to Detective Charles Seely's ("Det. Seely") testimony. Featherston asserts that Seely testified

that Payne told him (Seely) that Featherston did not have permission to possess his truck, his gun, or his credit cards. However, our review of the record reveals this assertion to be inaccurate. During his direct examination Det. Seely testified as follows:

> **Prosecutor: As part of your investigation, did you have contact with Mr. Payne to determine if he gave anybody permission to have his truck or use his credit card, or have his credit cards?**
>
> **Det. Seely: Yes I did.**
>
> **Counsel for Featherston: Objection. Hearsay.**
>
> **Prosecutor: Your Honor, it is confirmation. The testimony is confirmation of his investigation.**
>
> **Trial Court: Objection overruled.**
>
> **Prosecutor: Please answer the question sir.**
>
> **Det. Seely: On the 17th I called Mr. Payne and had a conversation with him.**

(09/28/2016 Tr. at 52).

{¶41} Here, Det. Seely's testimony was not offered to prove the truth of the matter asserted. Rather, Det. Seely's testimony establishes that he contacted Payne on June 17th to further his investigation as to the stolen property and its use. Because this statement is not offered to prove the truth of the matter asserted,[5] it is

---

[5] Appellant seems to confuse Det. Seely's above referenced testimony for the proposition that Payne told Det. Seely that he didn't give anyone permission to use his (Payne's) truck, gun, or credit card. Had that been the actual testimony of Det. Seely hearsay analysis would have been appropriate.

not hearsay and the trial court correctly allowed Det. Seely to testify as to his investigation of the stolen property.

{¶42} Featherston also asserts that Det. Seely's use of an internet mapping service to discern the distance between Featherston's and Payne's homes in Texas amounted to hearsay. Det. Seely testified that he used Google Maps to approximate the distance between Featherston and Payne's Texas residences was between four (4) and seven (7) miles. (*Id.* at 57-58). "Pursuant to the definition of hearsay, hearsay must first be an out-of-court statement." *State v. Armstead,* 85 Ohio App.3d 247, 253, 619 N.E.2d 513 (3rd Dist.1993). Testifying about using a mapping service, upon a proper foundation, does not constitute assertive conduct, an oral declaration, or a written declaration made by Det. Seely to prove the truth of the matter asserted. *Id.* Thus, this conduct does not meet the definition of hearsay, and Featherston's argument regarding the admission of this testimony is without merit.

{¶43} Lastly, Featherston asserts that when Det. Seely testified that Payne told him that he did not sign a credit card receipt at the Kenton gas station, such testimony was hearsay. However, our review of the record reveals that Payne testified that he did not sign the receipt at the local gas station and was subject to cross examination on his testimony. (09/28/2016 Tr. at 33, 35). Thus, because Payne, as the declarant testified on this matter and was subject to cross-examination,

Det. Seely's testimony is not hearsay pursuant to Evid.R. 801(D). As such, Featherston's hearsay arguments attributable to Det. Seely are without merit.

*Detective McKee's Testimony*

**{¶44}** Featherston's final contention concerning inadmissible hearsay statements being admitted involves the testimony of Detective Michael McKee ("Det. McKee"). Featherston contends that Det. McKee's testimony to establish that the handgun found in Featherston's bedroom was identified by Payne as his handgun constituted inadmissible hearsay. Featherston further asserts that because Payne testified prior to Det. McKee and did not identify his handgun during his testimony, Det. McKee's testimony as to Payne's out of court identification of his handgun was hearsay.

**{¶45}** Our review of the record reveals that competent and credible evidence exists in the record to support the inference that the gun found in the bedroom where Featherston was staying belonged to Payne. For example, the State proved that Payne's truck was found in Ohio and was driven by Featherston. (09/28/2016 Tr. at 51). The State also proved that Featherston used Payne's credit card found in his wallet left in his truck while he was in Kenton. (*Id.* at 11, 172-174, 201). The State also proved that Payne's personal belongings were intermingled with Featherston's belongings, both in Payne's truck and in the bedroom of the Ohio residence where Featherston was staying. (*Id.* at 24-25). Given these inferences, the jury could

reasonably infer that the handgun found in the bedroom where Featherston was staying, was in fact the handgun Payne left in his truck.

**{¶46}** We also find that these stated inferences are not "stacked," but can be inferred from separate facts, and as such, are reasonable inferences for the fact-finder to consider. *See Cowans,* 87 Ohio St.3d 68, 78, 1999-Ohio-250, 717 N.E.2d 298. As such, we find that under the facts of this case, even if the admission of the testimony of Det. Seely was impermissibly permitted because of hearsay, the admission was harmless error beyond a reasonable doubt. Accordingly, Featherston's third assignment of error is overruled.

### Fourth Assignment of Error

**{¶47}** In his fourth assignment of error, Featherston asserts that the trial court erred in accepting the jury's guilty finding, as the verdicts were against the manifest weight of the evidence.[6] For the following reasons, we disagree.

### Standard of Review

**{¶48}** In analyzing a claim that the conviction was against the manifest weight of the evidence, an appellate court:

> sits as the "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. * * * The appellate court, 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines

---

[6] While Featherston attempts to analyze his fourth assignment of error under both a "sufficiency of the evidence" and a "manifest weight" standard, the argument presented in the fourth assignment of error is a "manifest weight" argument and we accordingly decline to review said assignment of error under a sufficiency of the evidence standard.

> whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'

*State v. Johnson,* 3rd Dist. Shelby No. 17-08-06, 2008-Ohio-4784, ¶ 4 quoting *State v. Jackson,* 169 Ohio App.3d 440, 2006-Ohio-6059, 863 N.E.2d 223, ¶ 14 (citations omitted). However, in sitting as the thirteenth juror the appellate court should give due deference to the findings made by the jury. *Id.*

{¶49} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis omitted.) *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th Ed.1990).

{¶50} Furthermore, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is

required." *Id.* at paragraph four of the syllabus, citing Ohio Constitution, Article IV, Section 3(B)(3).

*Relevant Statutes*

**{¶51}** As discussed above in Assignment of Error I, Featherston was convicted of three counts of Receiving Stolen Property, in violation of R.C. 2913.51(A),(C). R.C. 2913.51 states, in its pertinent part: "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense. * * * Whoever violates this section is guilty of receiving stolen property." (Emphasis added.) R.C. 2913.51(A),(C).

**{¶52}** Featherston was also convicted of one count of Identity Fraud of an Elderly Person, in violation of R.C. 2913.49(B)(2). R.C. 2913.49(B)(2) states: "[n]o person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to do [* * *] the following: [r]epresent the other person's personal identifying information as the person's own personal identifying information." R.C. 2913.49(B)(2). For purposes of this statute, an Elderly Person is defined in R.C. 2913.01(CC) as: "[…] a person who is sixty-five years of age or older." R.C. 2913.01(CC).

**{¶53}** Lastly, Featherston was convicted of one count of Forgery, in violation of R.C. 2913.31(A)(1). R.C. 2913.31(A)(1) states, in relevant part: "[n]o person,

with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following: [f]orge any writing of another without the other person's authority." R.C. 2913.31 (A)(1).

*Evidence Presented*

*Count I – Receiving Stolen Property*

**{¶54}** In regards to the Count I, Receiving Stolen Property as it pertains to the motor vehicle, the State presented the testimony of Donald Payne, the vehicle owner, who testified that his pickup went missing from his residence on June 11, 2016. (09/28/16 Tr. at 10). Additionally, Payne testified that he did not give anyone permission to take his vehicle, to drive it, or to keep his vehicle for any purpose. (*Id.* at 10-11). The State also produced a photo of Payne's 2007 Honda Ridgeline pick-up truck, license plate, registration, and interior, which Payne identified as belonging to him. (*Id.* at 16-25; State's Ex. Nos. 2-10, 13). Further, during Payne's testimony, he was able to identify the contents of the vehicle that *did not* belong to him. (*Id.* at 23-25; State's Ex. Nos. 11, 12, 14, 15). In addition to Payne's testimony as to his ownership of the truck, the State also produced a certified record from the Bureau of Motor Vehicles in Texas revealing that Payne was the owner of the 2007 Honda Ridgeline as of June 11, 2016. (*Id.* at 34; State's Ex. 49).

**{¶55}** Det. Seely testified that Featherston was observed driving a 2007 Honda Ridgeline pick-up truck in Kenton, Ohio on June 15, 2016. (*Id.* at 38-41).

Det. Seely also testified that after obtaining a complete license plate number, the aforementioned vehicle came back as Payne's stolen pick-up. (*Id.* at 42). Det. Seely's testimony also reveals that Featherston was the individual observed driving the vehicle on June 15th and 16th in Kenton, and was the suspect who was apprehended upon completion of the traffic stop to recover Payne's stolen pickup. (*Id.* at 48).

{¶56} Kenton, Ohio law enforcement officers involved with interception of Payne's stolen pickup truck also identified Featherston as the driver of Payne's stolen vehicle. Specifically, Det. McKee and Sgt. Scott Holbrook identified Featherston as the driver of the stolen truck. (*Id.* at 113; 252).

*Count II – Receiving Stolen Property*

{¶57} In regards to Count II, Receiving Stolen Property as it pertains to Payne's firearm, Payne testified that his Kahr nine millimeter handgun was located in the center console of his vehicle at the time his pickup was stolen. (*Id.* at 12).

{¶58} Det. Seely testified that upon an initial search of the stolen vehicle, there was no firearm located. (*Id.* at 53). However, Det. McKee testified that a search of the residence where Featherston was staying in Kenton revealed that a Kahr nine millimeter handgun was located in said residence. (*Id.* at 124). Additionally, Det. McKee testified that Payne identified the handgun as his. (*Id.* at 128). The State also introduced the recovered handgun as an exhibit for the jury to

consider, together with pictures of the location where the handgun was recovered. (*Id.* at 124-29; State's Ex. Nos. 25-31, 43). Lastly, Vicky Spencer, the owner of the residence where the handgun was recovered, testified that she does not own a gun and she did not know how a gun got in her home. (*Id.* at 215-16).

*Count III – Receiving Stolen Property*

**{¶59}** In regards to Count III, Receiving Stolen Property as it pertains to Payne's credit cards, Payne testified that he had three or four credit cards in his truck at the time it was stolen, and he stopped payment on all but one credit card that he forgot about. (*Id.* at 16). The State produced evidence of each of the recovered credit cards found in Featherston's possession, with Payne identifying each of the credit cards by his name and the last four digits on each card. (*Id.* at 25-29; State's Ex. Nos. 17-19, 47). Additionally, Payne testified that prior to coming to Ohio to testify, he had never been to Ohio, and he did not authorize Featherston to use his credit card or sign his name. (*Id.* at 30-31).

**{¶60}** In addition to Payne's testimony, Det. Kemmere, who was involved with the apprehension of Featherston on June 16, 2016, testified that he located a pack of cigarettes on Featherston that contained a credit card with Donald Payne's name on it. (*Id.* at 83, 89). Finally, the State produced the credit card that was located on Featherston as evidence. (*Id.,* State's Ex. No. 45).

*Count IV – Identify Fraud Against an Elderly*
*Person & Count V – Forgery*

**{¶61}** In regards to Count IV, Identity Fraud Against an Elderly Person, the State produced the testimony of Payne to establish that Payne was over the statutory requirement of 65 to be classified as an elderly person. (*Id.* at 10). In regards to Count IV and Count V, Forgery, the state produced receipts, and offered the testimony of Payne regarding the items purchased. (*Id.* at 31-32; State's Ex. Nos. 21-23, 46). Payne testified that he did not make purchases with his credit card at Walmart in Kenton, Ohio; Dairy Queen in Hamilton, Ohio; Dollar Tree in Illinois; or at the gas station in Kenton, Ohio where Featherston was first seen by law enforcement. (*Id.*). Payne testified that the signature on the gas station credit card receipt was not his. (*Id.* at 33).

**{¶62}** In addition to Payne's testimony, the State offered the testimony of Det. Seely to the jury. Det. Seely was able to recover a cell phone that Featherston purchased on June 15, 2016 at the Kenton, Ohio Walmart with Payne's credit card. (*Id.* at 71). The State also produced the cell phone that was purchased with Payne's stolen credit card. (*Id.*; State's Ex. No. 48). Additionally, the State produced video footage and camera still shots from Walmart showing Featherston making purchases at its Kenton, Ohio store on June 16, 2016. (*Id.* at 146-49; State's Ex. Nos. 32, 33).

**{¶63}** Further, the State also elicited testimony from Samantha Oreglia, an employee at the Kenton Walmart, who identified Featherston in court as the person

who purchased the items on June 16, 2016. Further, the State entered into evidence a copy of the Walmart receipt Featherston signed, as Payne, on June 16. (*Id.* at 187; State's Ex. No. 34).

**{¶64}** Lastly, the State also offered the testimony of Lori Treen ("Treen"), a clerk at the local gas station where Featherston was observed, to the jury. Treen testified that Featherston was the individual who stopped at the store and purchased various items from the gas station, swiped the credit card, and signed as Donald Payne. (*Id.* 195-96, 202). Additionally, the State also produced a copy of the receipt containing a list of the items purchased and Payne's forged signature. (*Id.* at 201; State's Ex. Nos 24, 46).

*Analysis*

**{¶65}** Our review of the record reveals that competent and credible evidence was presented to the jury and demonstrates that the jury was able to consider all issues before them. Consistent with the rationale in *Johnson,* we have weighed the evidence and all reasonable inferences and do not find that the jury clearly lost its way by its verdicts of guilty. Thus, from our review of the record set forth above, we cannot say that a manifest miscarriage of justice occurred.

**{¶66}** Moreover, since we are guided by the presumption that the jury was in the best position to view the witnesses and weigh the credibility of the proffered testimony, we cannot say that the jury lost its way in convicting Featherston of three

counts of Receiving Stolen Property, one count of Identity Fraud Against a Person in a Protected Class, and one count of Forgery. *See State v. Vencill,* 10th Dist. Franklin No. 11AP-1050, 2012-Ohio-4419, ¶ 11.

**{¶67}** Accordingly, we overrule the fourth assignment of error.

**{¶68}** Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the Appellant's convictions in the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**