[Cite as *State v. Cook*, 2024-Ohio-2966.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2023 CA 0053 |
| ARTHUR M. COOK, JR. | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common Pleas, Case No. 2023 CR 00144

JUDGMENT:      Affirmed in part; reversed in part and remanded

DATE OF JUDGMENT ENTRY:      August 5, 2024

APPEARANCES:

For Plaintiff-Appellee

JODIE SCHUMACHER
PROSECUTING ATTORNEY
MEGAN HOBART
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio 44902

For Defendant-Appellant

WILLIAM T. CRAMER
470 Olde Worthington Road
Suite 200
Westerville, Ohio 43082

*Wise, J.*

**{¶1}** Defendant-Appellant, Arthur Monroe Cook, Jr., appeals from his convictions and sentences in the Court of Common Pleas, Richland County, on multiple felony counts, including robbery, grand theft and failure to comply with an order or signal of a police officer.  Appellee is the State of Ohio.

### FACTS AND PROCEDURAL BACKGROUND

*Red Volkswagen Jetta clocked at 120 miles per hour on I-71.*

**{¶2}** On February 13, 2023, Ohio State Highway Patrol Trooper Kevin Peshek was working the 10:00 pm to 6:00 am shift based at the Ashland County Post.  His duties that night included patrolling I-71 for traffic and criminal violations.

**{¶3}** Around 11:42 pm, while parked on the crossover in Ashland County by mile marker 191, he saw a red Volkswagen Jetta travelling at a high rate of speed going south on I-71.  Trooper Peshek visually established the speed at 120 miles per hour in a 70 mile speed zone.

**{¶4}** The Trooper pulled behind the Volkswagen to initiate a traffic stop.  It took him five minutes to catch up to the Volkswagen and with his emergency traffic lights on, he followed the Volkswagen.  The Volkswagen turned off the Ashland exit ramp as if to stop but instead abruptly took a hard left and entered I-71 again.

**{¶5}** The Volkswagen continued down I-71 South at a high rate of speed travelling in and out of lanes.  The Volkswagen passed mile marker 180 and entered Richland County.

**{¶6}** It took the exit for West U.S. 30 and entered the rest area only to quickly do a U-turn and go eastbound in the westbound lane – the wrong way on U.S.30.

{¶7} Trooper Peshek terminated the pursuit for public safety reasons and notified dispatch. He also radioed the make, model and license plate number of the Volkswagen to dispatch and learned that the owner of the Volkswagen had reported it stolen. He also learned that the stolen Volkswagen was in a pursuit with the Wooster-based Highway Patrol the night before for excessive speed that was also terminated for public safety reasons.

*Volkswagen found behind a barn in Richland County*

{¶8} Meanwhile, the pursuit of the Volkswagen was reported to law enforcement in Richland County and Ashland County.

{¶9} Deputy Sheriff Caleb Neer of the Richland County Sheriff's Office heard the pursuit on his scanner and found the Volkswagen behind a barn off of Crider Road in Richland County. He radioed his finding, and seven law enforcement officers responded to the scene; four from Richland County and three from the Ohio State Highway Patrol including Trooper Peshek.

{¶10} The Volkswagen was empty and Deputy Neer opened the door of the unlocked Volkswagen. He found a wallet in the right passenger seat with a driver's license. The name on the license was the appellant, Arthur Cook, Jr. Another identification was also found in the Volkswagen.

{¶11} Believing that the driver of the Volkswagen was hiding in the area of the barn, Trooper Peshek called for aerial surveillance from the Ohio State aerial patrol based in Dublin, Ohio.

*Cook absconds with Ford F-150 driven by Lieutenant Steven Boyd*

{¶12}  Law Enforcement searched the area of the barn looking for the driver of the Volkswagen believed to be Cook.  Lieutenant Steven Boyd, night shift supervisor for the Richland County Sheriff's Department, joined in the search.  As some of the area was wooded, he went back to the Ford F-150 truck/cruiser he drove to the scene to get a thermal-imaging camera out of the safe box in the bed of the truck. The truck was identified with tags and emblems as a Richland County vehicle.  He unlocked the truck with a key he had on his person while the key fob was left in the ignition with the truck running.

{¶13}  The truck was equipped with a gun rack in the back of the driver's seat that held an AR assault rifle and a shotgun.  The assault rifle held a magazine with rounds of bullets.  The chamber, however, was empty; there was no bullet in the chamber.

{¶14}  The gun rack also held a Remington 870 shotgun with an orange stock that had been converted to "less than lethal" meaning that it was unloaded but rounds of little lead balls were attached to the butt end of the shotgun.  It still, however, could act as a shotgun and expel lethal rounds.  When one of the firearms was needed by Lieutenant Boyd, he would hit the "gun" button right next to the driver's seat and grab the firearm. The "gun" button was right next to the button which controlled the lights. The firearms could be in hand within three seconds.

{¶15}  The truck also contained several sheets of papers later identified as documents in use by Lieutenant Boyd as part of his civil duties.

{¶16}  While Lieutenant Boyd and his team were huddled around discussing their next step, they heard one of the State Troopers yell "stop" and saw the Lieutenant's

truck/cruiser approaching them at a high rate of speed. They jumped out of the way and approached their vehicles in pursuit of the F-150.

**{¶17}** The F-150 truck/cruiser was now being driven by Cook and was followed from the air by Ohio State Highway Patrol Trooper Taylor Vogelmeier. The airplane was equipped with a thermal imaging camera that tracked the stolen truck for several miles at high rates of speed. The F-150 traveled for over 30 miles at high speeds for 32 minutes.

*Cook is apprehended and arrested*

**{¶18}** Finally, Cook, in the F-150, came to a stop after spike strips were deployed to flatten the tires, and law enforcement cruisers forced the truck into a field off State Route 545 in Richland County. Cook crawled out of the driver's-side window and on to the hood of Deputy Neer's cruiser. He was carrying no weapon.

**{¶19}** Cook jumped to the ground and was pinned to the ground by Deputy Neer. Cook would not comply with the verbal commands of the Deputies and kept his hands under his body. Cook was struck several times by the deputies and finally showed his hands, was handcuffed and arrested.

**{¶20}** Because he was bleeding from his nose and forehead, Mansfield EMS was called. After Cook was medically cleared, he was transported to jail. In the Deputy's cruiser, he identified himself as Arthur Cook and gave the Deputy a social security number.

**{¶21}** Lieutenant Boyd testified that the firearms were still in the same position as he had left them, and there was no evidence that the button marked "gun" in the truck was pushed to unlock the firearms. However, the light button next to the gun button had been activated, and Cook changed the lights from strobe to a different light pattern.

*Indictment*

**{¶22}** The May, 2023 term of the Richland County Grand Jury returned an indictment against appellant as follows:

| Count One | Robbery [F2] | R.C. 2911.02(A)(1) R.C. 2911.02(B) R.C. 2929.14(A)(3)(a) |
|---|---|---|
| Count Two | Failure to Comply [F3] | R.C. 2921.331(B) R.C. 2921.331(C)(5)(a)(ii) |
| Count Three | Failure to Comply [F3] | R.C. 2921.331(B) R.C. 2921.331(C)(5)(a)(ii) |
| Count Four | Failure to Comply [F3] | R.C. 2921.331(B) R.C. 2921.331(C)(5)(a)(ii) |
| Count Five | Grand Theft [F4] Motor Vehicle | R.C. 2913.02(A)(1) R.C. 2913.02(B)(5) |
| Count Six | Grand Theft [F3] Shotgun | R.C. 2913.02(A)(1) R.C. 2913.02(A)(1) R.C. 2913.02(B)(4) |
| Count Seven | Grand Theft [F3] Rifle | R.C. 2913.02(A)(1) R.C. 2913.02(B)(4) |

**{¶23}** The first five Counts contained a one-year Firearm Specification, R.C. 2941.141(A). The robbery count contained a specification that Cook had previously been convicted or pleaded guilty to two robberies.

*Cook found guilty at trial and sentenced*

**{¶24}** Cook pleaded not guilty and the charges were tried to a jury in August, 2023.

**{¶25}** Cook was found guilty of all charges heard by the jury.

**{¶26}**   Cook returned to the trial court for sentencing on August 25, 2023. Cook was sentenced to prison terms as follows:

| | |
|---|---|
| Count One, Count Five merged<br>Robbery, Grand Theft of Motor Vehicle | 8-12 years |
| Count Two<br>Failure to Comply | 3 years |
| Count Three, Count Four merged<br>Failure to Comply, Failure to Comply | 3 years |
| Count Six<br>Grand Theft – Shotgun | 3 years |
| Count Seven<br>Grand Theft – Rifle | 3 years |

**{¶27}**   The trial court ordered the sentences on Count Six and Count Seven to be served concurrently. The trial court ordered the one-year firearm specifications to be served concurrently. The state elected to have Cook sentenced on the robbery conviction.

**{¶28}**   In all, the total prison term was 18 to 22 years.  The trial court also imposed a maximum of three years of post-release control.

**{¶29}**   Cook timely appealed his convictions and sentences for robbery, grand thefts, and firearm specifications.  He raises the following Assignments of Error:

**ASSIGNMENTS OF ERROR**

**{¶30}**   "I.   APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED BY GUILTY VERDICTS ON ROBBERY, GRAND THEFT OF A FIREARM, AND THE FIREARM SPECIFICATIONS WHERE THERE WAS INSUFFICIENT EVIDENCE TO PROVE THAT APPELLANT CONTROLLED THE FIREARMS MOUNTED IN THE SHERIFF'S TRUCK.

**{¶31}** "II.      THE WEIGHT OF THE EVIDENCE RELATING TO APPELLANT'S CONTROL OVER THE FIREARMS MOUNTED IN THE SHERIFF'S TRUCK DID NOT SUPPORT THE GUILTY VERDICTS ON ROBBERY, GRAND THEFT OF A FIREARM, AND THE FIREARM SPECIFICATIONS.

**{¶32}** "III.     THE COURT IMPROPERLY IMPOSED MULTIPLE PUNISHMENTS FOR THE SAME OFFENSE IN VIOLATION OF DOUBLE JEOPARDY BY FAILING TO MERGE ALL THE THEFT COUNTS INTO ONE THEFT OFFENSE AND BY FAILING TO MERGE ALL THE THEFT COUNTS INTO THE ROBBERY OFFENSE."

### LAW AND ANALYSIS

### III. Merger

**{¶33}** We will consider appellant's third assignment of error first, as it impacts  the remaining assignments of error.  In his third assignment of error, appellant argues, based on a theory of allied offenses of similar import, that the trial court erred by failing to merge all three of the grand theft offenses into one theft offense and all of the grand theft offenses into the robbery offense.

**{¶34}** We review this issue under a *de novo* standard of review.  *State v. Williams,* 2012-Ohio-5699, ¶ 12.

*Law on Merger*

**{¶35}** R.C. 2941.25 prohibits the imposition of multiple punishments for the same criminal conduct and provides:

> (A) Where the same conduct by defendant can be construed to
> constitute two or more allied offenses of similar import, the indictment or

information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶36} The Supreme Court of Ohio, in *State v. Ruff,* 2015-Ohio-995, established that the test for determining whether offenses are allied offenses of similar import requires the trial court to consider three separate factors: import, conduct, and animus. Convictions do not merge and a defendant may be sentenced for multiple offenses if any of the following are true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus. *Id.* at ¶ 25. *State v. Lewis,* 2016-Ohio-7002, ¶ 21 (5th Dist.). ("We now apply a three-part test under R.C. 2941.25 to determine whether a defendant can be convicted of multiple offenses.").

{¶37} The imposition of concurrent sentences is not the equivalent of merging allied offenses. *State v. Damron,* 2011-Ohio-2268, ¶ 17.

{¶38} We now apply a *Ruff* analysis to appellant's allied offense argument.

*Merger of three Grand Theft Counts*

{¶39} Cook was charged by indictment with three counts of grand theft and convicted of all three counts by the jury. At sentencing, the trial court merged the grand theft conviction for the motor vehicle [Count Five] with the robbery conviction [Count One].

It sentenced Cook to thirty-six months for the grand theft conviction for the rifle [Count Six] and thirty-six months for the grand theft conviction for the shotgun [Count Seven]. While it imposed the sentences concurrent, it nonetheless imposed separate sentences and did not merge the sentences.

{¶40} Applying a *R*uff analysis, we find that the grand theft of the items from the same place are not separate and distinct offenses. They were not committed with a separate animus or motivation. The convictions stem from Cook's theft of a Richland County Sheriff Deputy F-150 truck/cruiser which contained two firearms positioned in a gun rack behind the driver's seat. The thefts were all motivated by Cook's attempt to flee law enforcement. There is no evidence that Cook specifically stole the truck because there were firearms inside. While the firearms were accessible to Cook and under his control for over thirty minutes, there is no evidence that Cook stole the truck/cruiser to gain access to the firearms.

{¶41} Cook's three grand theft convictions were based on R.C. 2913.02 which states:

> (A)   No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways.
>
> (1) without the consent of the owner or person authorized to give consent;
>
> If the property stolen is a firearm, a violation of the section is grand theft, R.C. 2913.01(A)(1)(B)(4);

If the property stolen is a motor vehicle, a violation of the section is

grand theft, R.C. 2913.01(A)(1)(B)(5).

**{¶42}** We find the analysis in *State v. Skapik,* 2015-Ohio-4404 (2nd Dist.) persuasive. In *Skapik,* defendant stole several items from a law enforcement officer's personal vehicle and was convicted, *inter alia*, of two felony counts of theft for stealing two firearms and one misdemeanor count for stealing a bulletproof vest. On appeal, he argued that the counts for theft should have merged as he stole everything at one time from one location in a single act committed against a single victim. In finding that the conduct constituted a single offense, the court stated:

In our view, this conduct constituted a single offense committed with

a single animus resulting in a single harm against a single victim. This is not

a case involving multiple theft offenses committed separately. Nor does it

involve a single act of theft committed against multiple victims. Consistent

with *Ruff, supra, w*e conclude that Skapik may be convicted and sentenced

for only one theft offense in connection with the items he stole from the

deputy sheriff's vehicle. *State v. Skapik,* 2015-Ohio-4404, at ¶ 13.

**{¶43}** We find that Cook's convictions for three counts of grand theft were committed with a single animus and must be merged for purposes of sentencing. Accordingly, we find that the three grand theft offenses should be treated as a single offense for sentencing purposes.

*Three grand theft offenses merged into robbery*

**{¶44}** Cook argues that the trial court erred in failing to merge all of the grand theft convictions with the robbery conviction. The trial court did merge the grand theft

conviction for the Ford F-150 truck/cruiser with the robbery conviction but sentenced Cook separately for the two grand theft convictions of the firearms.

{¶45} Robbery and theft are allied offenses of similar import. *State v. Johnson,* 6 Ohio St.3d 420, 423 (1983), overruled on other grounds. *Ohio v. Johnson,* 467 U.S. 493 (1984). *In re L.S.,* 2021-Ohio-3353, ¶28 (8th Dist.).

{¶46} Cook was charged with robbery under R.C. 2911.02(A)(1) which states:

(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control.

{¶47} Cook was also charged with grand theft of both the rifle and the shotgun in the gun rack in the Richland County Ford F-150 truck. As noted by appellant in his brief, the basis of the robbery charge and conviction was the presence of the firearms.

{¶48} The jury was instructed on the robbery offense as follows:

Before you can find him [Cook] guilty of robbery as contained in Count One, you must find beyond a reasonable doubt that, on or about the 14th day of February, 2023, in Richland County, Ohio, the Defendant, Mr. Cook, in attempting to commit a theft offense upon the Richland County Sheriff's Office or in fleeing immediately after the attempt to commit the offense, had a deadly weapon on or about his person or under his or her control, in this case, a firearm. Tr. 1, at 270-271.

**{¶49}** Cook was also charged with grand theft of the shotgun and rifle found in the truck/cruiser.

**{¶50}** The jury was instructed on the grand theft offense [Counts Six and Seven] as follows:

> Before you can find him [Cook] guilty of grand theft when the property is a firearm or dangerous ordinance as contained in Count Six, you must find beyond a reasonable doubt that on or about the 14th day of February, 2023, in Richland County, Ohio, the defendant, Mr. Cook, with the purpose to deprive the owners, the Richland County Board of Commissioners and Richland County Sheriff's Office, of property or services, to wit: a shotgun [rifle], did knowingly obtain or exert control over either the property or services without the consent of the owner or persons authorized to give consent. Tr. 1, at 287-288.

**{¶51}** Applying a *Ruff* analysis, the offenses of robbery involving a firearm and grand theft of a firearm are similar in import. The offenses were committed on the same day in the same manner. They were not separate and distinct offenses. There was only one victim. The offenses were committed with the same animus or motivation – to flee law enforcement.

**{¶52}** While the trial court did run the sentences concurrent [Count 6 and Count 7], Cook was prejudiced by having more convictions than are authorized by law. *State v. Underwood,* 2010-Ohio-1, ¶ 31.

**{¶53}** The trial court was required to merge the offense of robbery with the offenses for grand theft.

*Plain error*

**{¶54}** This Court has recognized that plain error occurs when a trial court failed to merge allied offenses of similar import. *State v. McLaughlin,* 2018-Ohio-2333, ¶19 (5th Dist.) (finding plain error in failing to merge two counts of theft). *See also, State v. Bridgeman,* 2011-Ohio-2680, ¶ 44 (2nd Dist.) (sua sponte notice of failure to merge aggravated robbery, aggravated burglary and grand theft).

**{¶55}** Upon the record before us, the trial court committed plain error when it failed to merge the grand theft counts and the robbery count as explained above.

**{¶56}** Appellant's third assignment of error is sustained.

### I, II Sufficiency of Evidence; Manifest Weight

**{¶57}** In appellant's first and second assignments of error, appellant challenges the sufficiency of the evidence and the weight of the evidence supporting his convictions for robbery [Count One], grand theft of a firearm [Count Six] and grand theft of a firearm [Count Seven]. Appellant also challenges his conviction on the one-year firearm specifications.

**{¶58}** This Court has found that the trial court erred in failing to merge Counts Six and Seven, grand theft of firearms, with appellant's robbery conviction [Count One].

**{¶59}** The 8th District Court of Appeals has found that with merged offenses, if there is sufficient evidence to support the offense on which the state elected to have the defendant sentenced, the reviewing court need not consider the sufficiency of the evidence or the manifest weight of the evidence on the merged counts because any error would constitute harmless error. *State v. Harris,* 2024-Ohio-2709, ¶ 56. (8th Dist.).

{¶60} Here, the state elected to have Cook sentenced on the robbery conviction. Accordingly, we will consider Cook's conviction for robbery [Count One] and the one year firearm specification in evaluating the sufficiency of the evidence and the manifest weight of the evidence, as grand thefts of the firearms convictions have merged with the robbery conviction.

{¶61} The standards for challenges to the sufficiency of the evidence and for challenges to the manifest weight of the evidence are quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. Thus, while a court of appeals may determine that a conviction is supported by sufficient evidence, that court may nevertheless conclude that the jury's verdict is against the weight of the evidence.

{¶62} Sufficiency challenges are a test of adequacy. As the supreme court has held:

> The sufficiency of the evidence is a test of adequacy. *Thompkins* at 386, 678 N.E.2d 541. When evaluating the adequacy of the evidence, we do not consider its credibility or effect in inducing belief. (citations omitted). Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. This naturally entails a review of the elements of the charged offense and a review of the state's evidence.

{¶63} The Ohio Supreme Court borrowed in *Jenks* this sufficiency standard from the federal standard. Thus, pursuant to this standard, the reviewing court's task is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.

**{¶64}** The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, (1991), paragraph two of the syllabus.

**{¶65}** Evidentiary claims that challenge the manifest weight of the evidence are reviewed under a different standard than sufficiency claims. Under the manifest weight standard of review, the reviewing court assesses all of the evidence admitted at trial to determine whether it agrees with the factfinder's resolution of conflicting evidence, sitting as a kind of "thirteenth juror," *Thompkins, supra*, at 386. The reviewing court must decide whether the jury lost its way in assessing and weighing the credibility of witnesses and admitted evidence and thereby created a manifest miscarriage of justice.

*Evidence of Robbery under R.C. 2911.02* (A)(1)

**{¶66}** Cook was found guilty of robbery pursuant to R.C. 2911.02 (A)(1). R.C. 2911.02 (A)(1) sets forth the elements of robbery and provides:

> (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control;

**{¶67}** Appellant argues that the shotgun and rifle mounted in a gun rack in the F-150 truck/cruiser he stole were locked behind the front seat of the driver's side of the truck, and there was no evidence that he even saw them, let alone possessed or controlled them.

**{¶68}** "Possession or control may be inferred when a person is able to exercise dominion or control over the thing or substance, or over the premises on which the thing or substance is found even though the thing or substance is not in his physical possession."

**{¶69}** Knowledge of the property is sufficient to show constructive possession. *State v. Patterson,* 2023-Ohio-1568, ¶ 13, (8th Dist.).

**{¶70}** The jury was instructed, without objection from appellant, on the definition of constructive possession:

> 'Constructive possession' means possession of the gun which can be either actual or constructive. Actual possession exists when the circumstances indicated that a person had a gun within his or her immediate physical control.

> Constructive possession exists when a person is aware of the presence of a gun and was able to exercise dominion and control over that gun, even though that gun may not have been within his or her immediate control.

> Both dominion and control, and whether a person was aware of the gun's presence may be established through circumstantial evidence. Thus, the State may establish constructive possession by circumstantial evidence alone. Tr., Aug. 24, 2023 at 288.

**{¶71}** Here, the evidence demonstrates that Cook stole the truck of a Lieutenant with the Richland County Sheriff's Department that contained both a rifle and a shotgun. The firearms were located directly behind the driver's seat in a gun rack. Lieutenant Boyd

testified that the firearms were easily accessible to the driver by pushing a button marked "gun" located close to the button on the front dashboard which controlled the lights. The firearms were within ten inches of the driver of the truck and could be accessed in probably three seconds. Cook was in the truck with the firearms for over thirty minutes.

**{¶72}** This evidence, if believed, is sufficient to establish the elements of robbery. The evidence was sufficient to prove that Cook constructively possessed the firearms located in the Sheriff's truck.

**{¶73}** Further, after reviewing the record, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in convicting Cook of robbery.

*Evidence Supporting the Firearm Specification*

**{¶74}** R. C. 2923.11(B)(1) defines firearm as follows:

[A]ny deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

**{¶75}** Here, Lieutenant Boyd testified that the firearms located in his truck were operable or could be rendered operable. The jury was able to observe the firearms.

**{¶76}** The one-year firearm specification applies when "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." R.C. 2941.141(A). Cook claims that there is no evidence the firearms were under his control.

**{¶77}**   Lieutenant Boyd testified that it would have taken seconds for the driver of the truck/cruiser to retrieve the firearms from the gun rack.  The firearms were under his control for over the thirty minutes he was in the truck/cruiser before being apprehended.

**{¶78}**   We find sufficient evidence to establish the firearm specifications and that the jury did not lose its way in convicting him of the firearm specifications.

**{¶79}**   Appellant's first and second assignments of error are overruled.

## CONCLUSION

**{¶80}**   The case is remanded with instructions for the trial court to merge Counts One, [robbery] with Counts Five, Six and Seven [grand theft].  The trial court shall allow the state to elect which of the allied offenses to proceed with for sentencing, and the trial court shall resentence appellant.  The jury's finding of guilt for committing the allied offenses remains intact, both before and after sentencing for the allied offenses.  *State v. Whitfield,* 2010-Ohio-2, ¶ 27.

**{¶81}**   Judgment affirmed in part, sentence vacated in part, and case remanded for merger and resentencing.

By: Wise, J.
Delaney, P. J., and
Hoffman, J., concur.


JWW/kt 0731