[Cite as *State v. Lane*, 2026-Ohio-2034.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-09-072 |
| vs. | : | <u>OPINION AND</u><br><u>JUDGMENT ENTRY</u><br>6/1/2026 |
| BRANDI RAE LANE, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2025 CR 000140

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Zachary Garrison, Assistant Prosecuting Attorney, for appellee.

W. Stephen Haynes, Clermont County Public Defender, and Matthew V. Faris, Assistant Public Defender, for appellant.

# **O P I N I O N**

**M. POWELL, J.**

{¶ 1} Brandi Rae Lane appeals her convictions for both stealing a car and attempting to steal the firearm that was in the car's glove box, on the grounds that the trial

court should have merged the offenses as allied offenses of similar import. Because we conclude that the trial court did not err by refusing to merge the offenses, we affirm.

## I. Factual and Procedural Background

{¶ 2} On February 25, 2025, a grand jury returned an eight-count indictment against Lane. Count 1 charged her with grand theft of a motor vehicle in violation of R.C. 2913.02(A)(1), a fourth-degree felony. Count 3 charged grand theft when the property is a firearm or dangerous ordnance also in violation of R.C. 2913.02(A)(1), a third-degree felony. Count 4 charged having weapons while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony. The remaining counts charged theft of a license plate (Count 2), aggravated possession of drugs (Count 5), aggravated trafficking in drugs (Count 6), possession of cocaine (Count 7), and trafficking in cocaine (Count 8). Lane pleaded not guilty.

{¶ 3} The parties negotiated a plea agreement. The State agreed to amend Count 3 to *attempted* grand theft when the property is a firearm or dangerous ordnance, a fourth-degree felony, and to amend Count 4 to *attempted* having weapons while under disability, also a fourth-degree felony. In exchange, Lane agreed to plead guilty to Count 1, Count 3 as amended, Count 4 as amended, and Count 7 (possession of cocaine). The remaining counts were dismissed.

{¶ 4} On July 2, 2025, the trial court held the plea hearing. After Lane entered her guilty pleas, the court asked the State for a statement of facts, and the prosecutor provided the following account.

{¶ 5} On February 10, 2025, Union Township police responded to a Marathon Gas Station for a report of a stolen vehicle. The victim told officers that he had left his Honda Civic running while he went inside the station and that the car was gone when he came back out. Surveillance footage showed Lane and co-defendant, Christa Saap,

talking and watching the victim as he exited the Civic and walked toward the store. Lane followed the victim inside and acted as a lookout while Saap got into the car and drove off. Lane bought a soda and left. The prosecutor added that, "In the same set of facts, Defendant Lane attempted to steal the victim's GLOCK19 firearm . . . that was in his glove box. If Defendant's actions were successful, they would have constituted the offense of grand theft of a firearm."

{¶ 6} The prosecutor's account then jumped ahead a few days. On February 14, 2025, Union Township police received information that the stolen Civic was at the home of Josh Shepherd, also in Union Township. Lane was living there too. Shepherd had called police to report that two of his firearms were missing and that an unknown male was inside the residence, and he gave police permission to search the home. Outside, officers found the Civic with stolen license plates affixed to it. Inside, in a basement bedroom, they found Lane asleep amid her personal belongings, along with the victim's Glock 19. A search warrant was then executed, and officers recovered the victim's license plate, cocaine, and drug paraphernalia. Lane admitted that she was a drug addict and that she had a prior felony conviction for aggravated possession of drugs—placing her under a firearms disability.

{¶ 7} Lane did not dispute the prosecutor's statement of facts, and the trial court accepted her guilty pleas.

{¶ 8} On August 21, 2025, the trial court held the sentencing hearing. The court imposed 12 months in prison on each of Counts 1, 3, and 4, and six months on Count 7, ordering all four sentences to run consecutively for an aggregate sentence of 42 months. At the close of the hearing, Lane objected that Counts 1 and 3 should merge, arguing that there was no separate animus because the firearm was inside the car when it was stolen. The trial court overruled the objection: "They're separate objects of the theft offenses—

- 3 -

separate offenses—certainly committed within a course of conduct, but I don't believe they merge. And I do believe that the consecutive findings are appropriate."

{¶ 9} Lane appealed.

## II. Analysis

{¶ 10} The single assignment of error alleges:

THE TRIAL COURT ERRED IN FINDING THAT GRAND THEFT OF A MOTOR VEHICLE AND ATTEMPTED GRAND THEFT WHEN THE PROPERTY IS A FIREARM OR DANGEROUS ORDNANCE WERE NOT ALLIED OFFENSES OF SIMILAR IMPORT.

{¶ 11} Lane's sole assignment of error challenges the trial court's refusal to merge her conviction for grand theft of a motor vehicle (Count 1) with her conviction for attempted grand theft of a firearm or dangerous ordnance (Count 3). Lane contends that both convictions arose from the same conduct and that imposing separate, consecutive sentences for each violates the allied-offenses statute, R.C. 2941.25. The State responds that the offenses were of dissimilar import and were committed separately and with a separate animus.

## A. Standard of Review and Governing Law

{¶ 12} Whether offenses are allied offenses of similar import subject to merger under R.C. 2941.25 is a question of law that we review de novo. *State v. Williams*, 2012-Ohio-5699, ¶ 28. The defendant bears the burden of establishing entitlement to the protection that R.C. 2941.25 provides. *State v. Penwell*, 2017-Ohio-7465, ¶ 11 (12th Dist.).

{¶ 13} R.C. 2941.25 codifies the constitutional protection against multiple punishments for the same offense. Division (A) provides that where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the defendant may be convicted of only one. Division (B), in turn, permits multiple

convictions where the offenses are of dissimilar import, or if they were committed separately or with a separate animus.

{¶ 14} The Ohio Supreme Court clarified how this analysis proceeds in *State v. Ruff*, 2015-Ohio-995. In evaluating whether a defendant's conduct supports multiple offenses, a court must ask three questions: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?" *Ruff* at ¶ 31. An affirmative answer to any one of these questions permits separate convictions. *Id.* The analysis depends on "the facts of a case because R.C. 2941.25 focuses on the defendant's conduct," and the evidence at the plea or sentencing hearing will reveal whether the offenses are of similar import. *Id.* at ¶ 26. In making this determination, a reviewing court must consider the entire record. *State v. Washington*, 2013-Ohio-4982, ¶ 24.

## B. The Factual Record

{¶ 15} Because this case was resolved by guilty plea, the prosecutor's recitation of facts at the plea hearing, together with the Bill of Particulars that the recitation tracked, supplies the bulk of what we know about Lane's conduct.

{¶ 16} As to the events of February 10, 2025, the prosecutor told the court that Lane and Saap surveilled the victim and his Honda Civic at a Marathon Gas Station; that Lane followed the victim into the store as a lookout while Saap drove off in the vehicle; and that, together, they "deprived the victim of his motor vehicle without his consent and authorization." The prosecutor noted that the State would have proceeded against Lane "under a theory of complicity." The prosecutor added that "[i]n the same set of facts, Defendant Lane attempted to steal the victim's GLOCK19 firearm . . . that was in his glove box."

{¶ 17} The Bill of Particulars and the prosecutor's recitation then turned to

February 14, 2025. Police received information that the stolen Civic was parked at the Union Township residence. When officers arrived, they observed the vehicle outside, now bearing stolen license plates. Inside, in the basement, they found Lane in a bedroom—the room, the Bill of Particulars states, "where [Lane] resides"—with the victim's Glock 19 "within her reach." Officers also recovered the victim's license plate from that same basement bedroom.

{¶ 18} Lane's sentencing memorandum supplied additional context. According to the memorandum, officers found Lane "passed out drunk and stoned" in the basement bedroom, with a methamphetamine pipe on the bed beside her. The firearm, the memorandum states, was "in a pile of clothes at the opposite end of the room from the bed." A friend of Lane and Saap, who was also staying at the residence, was discovered hiding in a laundry room access panel in the basement.

{¶ 19} Several inferences follow naturally from these facts. The Glock 19 was inside the Civic's glove box when the vehicle was stolen on February 10. By February 14, it was no longer there. The firearm had been removed from the glove box and brought into Lane's basement bedroom. And the record makes clear that this bedroom was Lane's residence, not a space she happened to be passing through. The stolen license plate, too, was recovered from that same room, again within Lane's own controlled space. The reasonable, and indeed compelling, inference is that Lane herself removed the firearm from the glove box and carried it into the room where she lived.

## C. The Scope of the Allied-Offense Inquiry

{¶ 20} Before turning to the *Ruff* factors, we must address the threshold question: what conduct is relevant to the allied-offense determination?

### 1. The "Attempted" Label on Count 3

{¶ 21} Lane was originally indicted for completed grand theft of a firearm, a third-

degree felony under R.C. 2913.02(B)(4). As part of the negotiated plea agreement, the State amended Count 3 to attempted grand theft of a firearm, reducing the charge to a fourth-degree felony. R.C. 2923.02(E)(1). The "attempted" label, then, is a product of plea negotiations, not a prosecutorial or judicial determination that the firearm theft was incomplete.

{¶ 22} The record confirms as much. By February 14, the Glock 19 had been removed from the glove box and was found in Lane's basement bedroom, separate from the stolen vehicle. That conduct is consistent with a completed theft. And the allied-offense analysis examines "the defendant's conduct," *Ruff*, 2015-Ohio-995, at ¶ 26, not the label attached to a charge through plea negotiations. A defendant may plead guilty to an amended attempt charge even when the evidence would support conviction for the completed offense. That is the nature of a negotiated plea. But the full course of conduct directed at the victim's firearm remains relevant to the *Ruff* analysis.

## 2. What Conduct Informs the Count 3 Analysis

{¶ 23} Lane contends that the conduct underlying Count 3 is limited to the February 10 taking of the vehicle. She points to the prosecutor's description of the attempted firearm theft as arising from "the same set of facts" as the vehicle theft, with the firearm "in [the victim's] glove box" at the time. The State, by contrast, points to the firearm's full trajectory, from glove box to basement bedroom, as evidence that the two offenses are not allied.

{¶ 24} The allied-offense inquiry under *Ruff* does not turn on what conduct a prosecutor chose to emphasize when laying out the factual basis for a particular count. It asks whether "the defendant's conduct" supporting the convictions warrants separate punishment. *Ruff* at ¶ 26. And in answering that question, a court must "review the entire record." *Washington*, 2013-Ohio-4982, at ¶ 24. The entire record here reveals far more

than a single moment at a gas station. It reveals the course of conduct directed at the victim's firearm: the taking of the vehicle that contained it, the removal of the firearm from the glove box, its transport into the basement bedroom where Lane was living, and its recovery there four days later. That entire course informs the allied-offense analysis for Counts 1 and 3 because it illuminates whether the two convictions rest on conduct that caused separate harms, was committed separately, or was animated by separate purposes.

{¶ 25} This conclusion follows from the nature of the offenses. Count 3 charged Lane with attempting to "obtain or exert control over" the victim's Glock 19 firearm during the time frame from February 10, 2025 to February 14, 2025. *See* R.C. 2913.02(A); R.C. 2923.02(A). The conduct relevant to that charge is not confined to the moment the Civic was driven away. Obtaining and exerting control over a firearm can be a course of conduct, and the record here reveals how Lane obtained and exercised that control. When a firearm begins in a vehicle's glove box and ends in the bedroom where the defendant is living, sitting near the license plate stolen from the same vehicle, the full trajectory bears directly on the nature and scope of the conduct at issue under R.C. 2941.25.

{¶ 26} To be sure, the prosecutor's narrative of the events on February 14, read in isolation, appears to correspond more directly to Count 4 (attempted having weapons while under disability) than to Count 3. But the allied-offense inquiry is not a count-by-count parsing of a prosecutor's plea-hearing recitation. It is a holistic examination of the defendant's conduct as revealed by the record. The prosecutor's characterization of Count 3 as arising from "the same set of facts" is not a binding concession that the two offenses necessarily arose from identical conduct. Indeed, the factual basis offered at a plea hearing will not always capture every dimension of the defendant's conduct relevant

to the legal question whether separate punishment is warranted.

{¶ 27} With these principles in mind, we turn to the *Ruff* analysis.

### D. The Offenses Were of Dissimilar Import

{¶ 28} Two or more offenses are of dissimilar import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff*, 2015-Ohio-995, at ¶ 26. There is no dispute that both offenses here involved the same victim. The question, then, is whether each offense produced a separate and identifiable harm.

{¶ 29} We conclude that it did. The reason is straightforward: the firearm did not stay in the car. Had the Glock 19 remained in the glove box from the moment of the vehicle theft through the moment of its recovery, this would be a different case. The vehicle theft would have encompassed the taking of everything inside it, and the case would resemble the line of decisions holding that multiple items taken in a single act of theft produce only a single harm.

{¶ 30} That line begins with *State v. Fischer*, 52 Ohio App.2d 53 (1st Dist. 1977), in which the First District held that "[t]he act of stealing a motor vehicle containing personal property constitutes one offense and a defendant may not be additionally convicted of stealing the personalty." *Fischer* at paragraph two of the syllabus. Courts applying *Ruff* have followed *Fischer*'s lead. In *State v. Skapik*, 2015-Ohio-4404 (2d Dist.), the Second District concluded that a defendant who took multiple items, including firearms, from a law enforcement officer's vehicle in a single act committed "a single offense committed with a single animus resulting in a single harm against a single victim." *Skapik* at ¶ 13. In *State v. Cook*, 2024-Ohio-2966 (5th Dist.), the Fifth District merged three grand-theft convictions where the defendant stole a truck containing two firearms in a gun rack, reasoning that "the thefts were all motivated by [the defendant']s attempt to flee law

enforcement" and that there was "no evidence that [the defendant] specifically stole the truck because there were firearms inside." *Cook* at ¶ 40. The same court reached a similar conclusion in *State v. Lewis*, 2016-Ohio-7002, ¶ 27 (5th Dist.), explaining that "*Ruff* does not require that we herein treat the theft of separate items from the same situs as separate and identifiable offenses." And the Eighth District applied the same reasoning in *State v. Evans*, 2020-Ohio-3968, ¶ 120 (8th Dist.), holding that items (wallet, credit cards, and cell phone) taken from a single victim at the same time and with the same purpose did not produce separate and identifiable harms.

{¶ 31} The thread running through *Fischer*, *Skapik*, *Cook*, *Lewis*, and *Evans* is that where a defendant takes a vehicle and everything inside it in a single act and engages in no further conduct directed at the contents, the theft of those contents is incidental to the theft of the vehicle, and the offenses merge.

{¶ 32} The problem for Lane is that none of these cases describes what happened here. In *Fischer*, the tools were inside the truck when it was stolen and were never separately possessed. In *Skapik*, the defendant broke into a vehicle and took everything at once—the firearms were never separated from the rest of the haul. In *Cook*, the firearms stayed in the gun rack behind the driver's seat throughout the defendant's flight from police; the defendant never touched them. In *Lewis*, the items were stolen from the same location during a single home invasion. And in *Evans*, the wallet, credit cards, and cell phone were taken from one victim at the same time. In every one of these cases, the items were taken and remained together as part of a single episode of theft, with no later act of separation or independent possession.

{¶ 33} Lane's case is different. Between February 10 and February 14, someone opened the vehicle's glove box, removed the Glock 19, and carried it into Lane's bedroom. Two facts strongly indicate that someone was Lane. First, the firearm was recovered in

Lane's own bedroom—a basement room described as the place "where she resides." Second, it was found (according to the Bill of Particulars) within her reach and alongside another fruit of the theft, the victim's license plate. When stolen property turns up in a defendant's own bedroom, within her reach, sitting next to other items stolen from the same victim, the ordinary inference is that the defendant herself brought it there and exercised dominion over it. That inference is especially strong on this record, where Lane pleaded guilty to attempting to exert control over the very firearm found in her room.

{¶ 34} Even if we credited Lane's suggestion that the record leaves doubt about who removed the firearm from the glove box, the result would be no different. The prosecutor stated that the State was prepared to proceed under a theory of complicity, and Lane pleaded guilty on that theory. (It was Saap who actually drove away with the Civic.) A person who aids or abets another "is prosecuted and punished as if he were a principal offender." R.C. 2923.03(F). Whether Lane removed the firearm with her own hands or facilitated its removal by another and then stored it in her own bedroom, her criminal liability extends to the full course of conduct directed at the firearm.

{¶ 35} In short, Lane did not merely take a vehicle with a firearm in it. She (or, at minimum, she in concert with others whose acts are attributable to her) took a vehicle, and then at some later point opened the glove box, removed the firearm, transported it into a separate structure, and retained it in her own bedroom. That is an act distinct from the vehicle theft itself. It is the kind of subsequent, independent conduct that the *Fischer* line of cases lacks.

{¶ 36} This case is more like *State v. Featherston*, 2017-Ohio-5487 (3d Dist.). There, the defendant was convicted of three counts of receiving stolen property—for a truck, a firearm found inside the truck, and a credit card. The Third District concluded that the harms were "separate and identifiable" because the defendant had separately chosen

to retain each item, observing that "[the defendant] chose to receive and retain [the victim]'s handgun by removing it from [the victim]'s truck to the bedroom where he [the defendant] was staying." *Featherston* at ¶ 24. Lane, like the defendant in *Featherston*, removed the victim's handgun from the victim's vehicle and brought it into the bedroom where she was staying.

{¶ 37} We recognize that *Featherston* involved receiving stolen property under R.C. 2913.51, not grand theft under R.C. 2913.02, and that the act of receiving stolen property ("receiv[ing], retain[ing], or dispos[ing] of" stolen property) differs from the act of theft ("obtain or exert control over" property). But the underlying principle holds in both contexts, regardless of the statutory label. When a defendant's conduct with respect to distinct items of stolen property involves separate acts of exerting control that produce separate harms, the offenses are of dissimilar import. Here, as in *Featherston*, the firearm was removed from the vehicle and possessed independently in the defendant's own bedroom, producing a harm to the victim that is separate and identifiable from the loss of his car.

{¶ 38} In sum, then, the victim suffered two harms that were separate and identifiable. He lost his vehicle, and he separately lost his firearm. Under *Ruff*, that is enough to establish that the offenses were of dissimilar import.

{¶ 39} Because we answer the first *Ruff* question in the affirmative, we could end the inquiry here, as an affirmative answer to any one of the three *Ruff* questions permits separate convictions, *Ruff*, 2015-Ohio-995, at ¶ 31. We nevertheless address the remaining factors briefly to provide a complete analysis.

### E. The Offenses Were Committed Separately

{¶ 40} The second *Ruff* factor asks whether the offenses were "committed separately." *Id.* at ¶ 31. We conclude that they were.

- 12 -

{¶ 41} The vehicle theft was complete on February 10, 2025, at the gas station, when Saap drove off in the Civic while Lane served as the lookout. At that point, the Glock 19 was in the glove box. By contrast, the attempted grand theft of the firearm required additional, independent conduct. The glove box had to be opened, the Glock 19 removed, and the firearm transported from the vehicle to Lane's basement bedroom. That conduct occurred in a different place, at a different time, and involved a different act of dispossession than driving away in the stolen car. And the firearm's ultimate location, in a basement bedroom Lane was using as her residence, confirms that those additional acts were performed.

{¶ 42} Our decision in *State v. Penwell*, 2017-Ohio-7465 (12th Dist.), supports this conclusion. The defendant in *Penwell* broke into a vehicle and then stole a credit card from a wallet he found inside. We held that the breaking and entering and the theft were separate offenses, reasoning that "once appellant had trespassed into the unoccupied structure involved with purpose to commit a theft offense, the breaking and entering was complete. The separate act of stealing the credit card from a wallet found in a vehicle constituted the theft offense." *Penwell* at ¶ 17.

{¶ 43} Lane correctly observes that *Penwell* involved different offenses (breaking and entering versus theft, rather than two species of theft) and different victims (the vehicle's owner was not the credit card's owner). We acknowledge those distinctions. But *Penwell*'s analysis does not depend on either.

{¶ 44} The point of *Penwell* analysis is that where one offense is complete before the other is committed, the two were committed separately for purposes of R.C. 2941.25, "'notwithstanding their proximity in time and that one was committed in order to commit the other.'" *Id.* at ¶ 16, quoting *State v. Back*, 2015-Ohio-4447, ¶ 12 (12th Dist.). Here, the vehicle theft was complete the moment Saap drove away. Removing the firearm from

- 13 -

the glove box and bringing it to Lane's bedroom was additional criminal conduct, performed at a different time and place, that went well beyond anything required to complete the theft of the vehicle.

### F. The Offenses Were Committed with Separate Animus

{¶ 45} The third *Ruff* factor asks whether the offenses were "committed with separate animus or motivation." *Ruff*, 2015-Ohio-995, at ¶ 31. For purposes of R.C. 2941.25(B), animus means "purpose" or "immediate motive." *State v. Lung*, 2012-Ohio-5352, ¶ 12 (12th Dist.). "'If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses.'" *Id.*, quoting *State v. Lewis*, 2012-Ohio-885, ¶ 13 (12th Dist.). And because "[a]nimus is often difficult to prove directly," it usually "must be inferred from the surrounding circumstances." *Id.*, citing *State v. Caudill*, 11 Ohio App.3d 252, 256 (12th Dist. 1983).

{¶ 46} Lane contends that her sole motive was to steal the vehicle and that the firearm's presence in the glove box was incidental to that purpose. We agree, up to a point. When the Civic was driven away from the gas station, the immediate motive was indeed to take the car. Indeed, there is nothing in the record to suggest that either Lane or her accomplice was aware that the gun was in the glovebox when the car was stolen as to form any animus regarding theft of the gun. And had the firearm never been separated from the vehicle, we might well conclude that a single animus animated both offenses. That is the conclusion courts have reached in similar cases. *See Skapik*, 2015-Ohio-4404, at ¶ 13 (2d Dist.); *Cook*, 2024-Ohio-2966, at ¶ 40 (5th Dist.).

{¶ 47} But Lane did not stop there. Her subsequent act of removing the firearm from the vehicle and carrying it into her own bedroom reflects a new and independent purpose to obtain and exert control over the firearm for its own sake, apart from the car. The offenses were committed with separate animus.

## III. Conclusion

{¶ 48} Each of the three *Ruff* factors supports the trial court's refusal to merge Counts 1 and 3. The offenses were of dissimilar import because the victim suffered separate and identifiable harms; they were committed separately because the firearm's removal from the vehicle and transport into Lane's bedroom was conduct distinct from the vehicle theft; and they were committed with separate animus because Lane's purpose in retaining the firearm in her own residence went beyond her purpose in taking the vehicle. Lane's sole assignment of error is overruled.

{¶ 49} The judgment of the trial court is affirmed.

BYRNE, P.J., and PIPER, J., concur.

# J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Robin N. Piper, Judge*

*/s/ Mike Powell, Judge*